Thank you, Your Honors. May it please the Court, my name is Elisa Miller Zellmeyer-Kupitz of Professional Corporation, Attorneys of Record for Reorganized Debtor, Orange County Nursery, Inc. And, Your Honors, I would like to reserve three minutes for rebuttal. Thank you. Your Honor, Orange County Nursery, Inc. is a corporation that's been around for over 100 years. It has been a family-owned business since that time. And, prior to 2009, certain minority shareholders filed an action to dissolve the corporation, which resulted in a state court order that is the linchpin of this appeal. This appeal involves questions of law. It involves fundamental questions of who is a creditor in bankruptcy and what is a claim. These questions are all to be answered de novo, as they are questions of law. Question number one is the effect of a state court order, which followed California Corporations Code Section 2000 virtually to the letter, which provided for an appraised value, which provided that Orange County Nursery or the majority shareholders purchased the shares at a stated price, or if they chose not to do so by a deadline stated, that then the case would return to the superior court to commence dissolution proceeding. In other words, they were given a right to purchase if they sought, if they desired to exercise it. Otherwise, the corporation under California law would simply be dissolved and everybody would get the pro rata share of the value, right? That is correct, Your Honor. Assuming for the moment you can't have a creditor's claim for somebody else's right to buy from you, that doesn't make any sense. It's not a right to sell, it's a right to have somebody buy if they want to, assuming for a moment that's true. Where does that leave us with this bankruptcy? If this bankruptcy had been a liquidation bankruptcy, pretty clearly it wouldn't make much difference, but they're not going to liquidate, are they? They propose to continue the corporation and the minority can just wait, right? Well, Your Honor, yes and no, correct and not correct. Okay, take it one at a time. They are, I'll start with the correct part. It is the majority's right to pay should they choose. There is no enforceable obligation on the part of the minority and that's why it's not a claim. But let's take that as given. Okay. Step two. Step two is that Orange County Nursery decided to continue to operate, but they gave the minority an out in the plan. Not much of an out, was it? No, it is exactly what they would have received had the corporation dissolved. They'd get liquidation value. Correct. Effective on the confirmation date, correct? Correct. Now, liquidation value means what in your mind, including the fact that other creditors have perhaps discounted their claims or not? Well, it wouldn't matter, Your Honor, because liquidation in a bankruptcy is virtually the same as the dissolution process in the state court. Exactly. You liquidate it and they get their pro rata share, school's out. Which is exactly... But they're not going to get just exactly that here, are they? The majority's going to go on in business, not going to liquidate the corporation, and they're not going to give them their liquidation value today, are they? Well, they would give it in the same way they would give it in the state court action. Because in the state court, had there been no bankruptcy, what would have happened is, the case would have returned to the superior court, there would have been a status conference, and they would have started dissolution. In a dissolution in the state court, all the creditors are paid pursuant to a priority scheme. Creditors get first, equity gets last. The taxes have to be paid. Everything occurs before equity gets a dime. But are you put off for three or four years while they go through some process of selling land and not selling land, etc., etc.? Correct. In this case, because of the way the plan was drafted, to provide equity, all equity, not just the minority, because, in fact, the minority are still equity. The minority could not get the dissolution value. They could not get the leftovers after all creditors, including the government, is paid unless they were equity. If they weren't equity, they would be entitled to nothing other than their attorney's fees, and we say is limited by them. I'm not a bankruptcy maker. I confess really ignorance about this area of the law. But from a practical point of view, I'm just wondering, what exactly is it that you seek to accomplish in bankruptcy? If this is not a claim, then that means, I guess, after the bankruptcy proceeding is ended, it goes back to the state law judgment, and there will be a dissolution at that particular time in any event. And I just don't understand the practical, on-the-ground aspects of this other than just delay. Am I missing something? Your Honor, it gives the debtor the chance to continue to operate. It gives them the opportunity to buy out the minority at a value, as stated by the court, should any shareholder, not just the minority shareholder, but any shareholder so elect. And if they do, it's probably faster than in the state court because they don't have to wait for everything to be liquidated. Why is it not to your advantage to have this constituted as a claim in bankruptcy rather than equity? I just don't understand the definition. Because, Your Honor, in bankruptcy, there's a concept called the absolute priority rule. And in order for equity to keep equity, it has to pay off all the claims in front of it in full. And equity... It can go back to the state court eventually in any event, am I right, Hugh? Regardless of what happens in the bankruptcy proceeding, you have to face up to the state court judgment and the appraised valuation, I guess. Not necessarily. They don't have to pay any valuation. They just have to liquidate in state court. Well, under the state court judgment... In the state court, they don't have to pay a dime if there's nothing left at the end of liquidation. Correct. They have to pay a pro rata share if there's something left. Correct. Correct. And that can be done through the bankruptcy process and allow OCN, which has been a live, living, breathing entity for more than 100 years... That's hindsight, Your Honor. I wasn't counsel of record then, but I don't know. You weren't happy with your appraised valuation and that may have triggered the bankruptcy? I believe that had the appraised valuation been a reasonable number, OCN always contended it wasn't, that probably bankruptcy could have been avoided, but that's the benefit of 20-20 hindsight. The thing is, Your Honors, if they had a claim, and we say they do not have a claim because under either 1015A or B, which is the definition of a claim in bankruptcy, it's the fundamental, one of the most fundamental provisions of our bankruptcy code is the definition of what is a claim and who is a creditor. Well, let's take the definition. There's no question they got an order in their favor from the state judge, right? They were entitled to payment? They weren't entitled to it. That's the problem. There's no entitlement to payment in that order. What does that order say with regard to payment? The state court order says... I'm sorry. It says they can... And it's at... The corporation can buy for $5 million. Correct. They can buy it for $5 million. They can, but they... It doesn't have to. Correct. And if they don't, then it goes to a dissolution. It tracks the language of bankruptcy... I'm sorry, of corporation's code section 2000 virtually verbatim. There is no right to be paid the $5 million. There's no enforceable obligation. There's no duty to pay. It's a right, but not an obligation. What did the California Court of Appeal interpret that to mean? The California Court of Appeal, there's only been, in my understanding, approximately two or three cases looking at corporations... Let's talk about in this case. In this case, the district court found... They said this order was self-executing and that Orange County, the majority, had to pay this amount of money by a certain date. And we believe the district court was incorrect. I'm not asking about the district court. I'm asking about the California Court of Appeal. The California Court of Appeal found that it was self-executing. And what was, under their interpretation, what was to happen? If the majority did not pay the $5 million by a date certain, which in this case was extended to January 22nd at 5 o'clock, then the debtor, OCN, was to dissolve. What happened was OCN filed bankruptcy approximately 10 minutes... The district court said that's a, what, a contingent claim? The state court was not interpreting what is a claim in a bankruptcy. Oh, I'm saying the district court said... I said the district court said... Oh, I'm sorry. They interpreted that as a contingent claim. Correct. Now, why is that wrong? Because there is no right to payment. In order to have a claim under 1015A or B, you have to have a right to payment. And here there is no enforceable right to payment that is different from, in kind or in substance, of any other shareholder in this case. The only right to payment is for... Excuse me, there is no right to payment at all. The 101B... The only right... I'm sorry, go ahead. Finish. I'm sorry. The only rights are as a shareholder. Once the election not to pay the $5 million is made, the only rights are as a shareholder. And those rights are only to get the dissolution value, if any, after the case is liquidated. And that's where Judge G, unfortunately, erred. The 101B says specifically that the right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. There seems to be a broad reach here. And what about the Fifth Circuit decision in Sharon? Isn't that pretty much what we have here? Yes and no. I mean, Sharon is actually a very good case for Orange County Nursery because Sharon included two different kinds of claims. First, it included a damage claim. And the damage claim is a right to payment. We do not have a damage claim in this case. It then looked at various equitable claims, restitution, resulting trust, and found that those were not claims because they could not be reduced to an enforceable obligation, an enforceable right to payment. And that's what we have here. We have an equitable claim that does not translate. But Sharon was ordered, similar to our case, you know, there was a prior order to buy out the minority share. How does that significantly or substantially differ from what we have here? We have a state court order here. Doesn't that really make this case different than all these other cases yet you have cited, which do not reduce themselves to an actual state judgment? No, respectfully, Your Honor, it doesn't. Because in the Sharon case, the issue was more whether the order could be converted into dollars. And in the Sharon case, the courts all found that it could be converted into dollars because of the way it was done. But in terms of the resulting trust, the trust on the land, that couldn't be. Your Honors, I see my time is up on the majority. If I could just wrap up. The bankruptcy court got it right here. The bankruptcy court found that the minority is just equity. It was equity the day before the filing. It was equity the day of the filing. And it continues to be equity today, and as such, properly treated as equity under the plan. Thank you. Yeah, please. Good morning. Good morning, Your Honors. May it please the Court, Ali Majdahi and Janet Gertz appearing on behalf of the minority. I think it's instructive, Your Honors, to reflect back on the fact that this dispute arose back in June of 2007 in a dissolution action which our client initiated. In response to that dissolution action, the majority made an election. Made an election to buy out the minority. Now, the reason why they made that election... Come on, that's not what the statute says, and that's not what they do. They said, we want the right to buy them out rather than dissolve the corporation. They were given that right, were they not? Correct, but they made a voluntary... But they did not have to exercise it, and the minority did not have a right to receive 5 million bucks, did it? No. They had the choice, Your Honor, to make the election... Who had the choice? The majority. The majority had the choice to pay the money, 5 million bucks, or to take the corporation to dissolution. No, no, no, no. Right? Or to have it dissolved for them, let's put it that way. The majority had the right, and this goes to the point that you were alluding to, to retain control. And in order to retain control, you make the election, and you get a stay. So you stay there... In a way. And you get a stay. The proceeding is stayed. And you pay your money, and then it's over, right? Yeah, but what happens is, you know, this is going back to 2007. So you retain control by making this election and getting a stay. Then the superior court appointed independent appraisers. Those appraisers came back, and then the court issued a binary order, a self-executing binary order that created two choices, pay or dissolve. Exactly. And they didn't pay. And they didn't pay. And what they did, though, at its core, what this dispute is about, even though it's couched in terms of Orange County Nursery, a priority dispute between the majority and the minority. And what the majority is arguing is that it can renege on its election, it can disregard a lawful order and avoid dissolution, and it can enjoy the benefits of control over five years, file bankruptcy, and then relegate the minority to equity and say, well, you know what, you're in the same legal position that you were in five years ago, even though we remained in control and even though the superior court issued an order that gave a binary choice. Let's say they didn't file bankruptcy, okay? Then the corporation would have to be dissolved, correct? Correct. And I assume that would take some time. Correct. I mean, it's got assets, I think, in Texas. Things have to be sold and all the creditors have to be paid, not delayed necessarily, but just paid, right? Correct. Unless they negotiate a deal. Correct. Right? And then whatever is left, everybody shares pro rata. That's what would have happened. Correct. And an additional thing that would have happened, Your Honor, that's very important, is that the majority would have lost control. Yeah, let's say they'd lost control for whatever that's worth. Now, instead what's going to happen under this is the creditors are going to get paid and the minority will receive the liquidation value of the corporation as of the confirmation order date. Correct?  So it says. Now, what I'm trying to figure out is, practically speaking, besides the fact the minority says, you know, we don't want you guys to be in control of the corporation. That's another question. They will get the liquidation value of the corporation on, which is all they would have gotten anyway, except maybe the values are changing over time. That's a problem, I understand. True? Now, if they've been in the state court and it took five years, they'd be where they are right now, I suppose. Well, Your Honor, let me answer that question by saying that, again, if dissolution would have occurred as it could have in 07, then obviously you would have not had five years of control by the majority. You would not have them essentially controlling the destiny of the corporation. I understand they couldn't control the destiny. I really do understand that if the dissolution had taken place. What I'm really trying to fathom is, so let's say it would have taken time. It's unlikely you could sell a liquidated corporation with land here, there, and everywhere in a month. Maybe you could, two months, who knows. So if it didn't liquidate that fast, that's just because the bankruptcy court is slow. And I take it state courts are slow sometimes also. In fact, sometimes they think federal courts move faster. That's neither here nor there. The point is, at the end of the process in the state proceeding, it's true. There would be no corporation left and the minority could say, goody, goody, those guys are out of business. But what the minority would walk away with would be the pro rata value of their shares, correct? Yes. On the liquidated value. What are they going to walk away with on this bank? Bankruptcy always fusses things around. They're going to walk away with the liquidated value of their shares, right? What we are trying to do, Your Honor, is elevate, and what the court found is that given the circumstances of this case, our client's rights are that of a creditor. So, therefore, they would be in an elevated position in terms of the distribution scheme of the bankruptcy code vis-à-vis the majority. I know that's what you're trying to do. And the question is, surely they're not a creditor of the $5 million because they had no right to $5 million. The majority could exercise that or not. So what they would have had a right to is the liquidated value of their shares. Isn't that what they've had a right to? As a creditor, correct. That's not what California law says. It says at the end of the liquidation process, it doesn't even say that. It says you can have the corporation liquidated. It doesn't make the minority shareholders a creditor in that case. It liquidates it and gives everybody their pro rata value of the shares. Is that not true? Your Honor, implicit in what you are suggesting is that we should completely ignore the dissolution order. And what the cases say, and I think the analysis has to start with 11 U.S.C. Section 5B, and it basically says you have a claim if three conditions are met. There's a right to an equitable remedy. There's a breach of performance. And that breach gives rise to payment. Let me ask you a different question for a second. If this had not been a reorganization bankruptcy, if they had just filed for bankruptcy, I take it you all would be happy as clams because the corporation would be liquidated and everybody would get their pro rata share and that's the end of it. Is that right? Not necessarily, Your Honor. I don't think you had a claim. Not necessarily. Yes, because there is what's triggering the claim, Your Honor, is disobeying the dissolution order. What did they disobey? By filing bankruptcy, essentially you had a self-executing order that was eviscerated. Wait a minute. Since when is filing bankruptcy considered a breach of contract, a breach of court orders, et cetera? I've never heard that before. They've committed a wrong by filing bankruptcy as such, period? No, there's a consequence to it, Your Honor. There is no wrong. There's a consequence. And that consequence is that there's a claim that arises by virtue of the equitable remedy of dissolution that is now unavailable. And I think that it goes to what Judge Block was suggesting, which is if you buy their argument, then the logical extension of their argument is that you need to enforce the dissolution order so that that is not dischargeable, which means they shouldn't be in control. So you can't have it both ways. You can't, on the one hand, say that it's non-dischargeable and it's not a claim. But I think you said that even if they'd filed not for reorganization, but they just filed for a liquidating bankruptcy, just here it is, liquidated court, which is what California Court of Appeals sort of had a notion might be happening. Liquidated court, even then, your clients would be disaffected by this because the corporation is going to be liquidated as they wished and everybody would get their liquidation value at the end. Is that right? Your Honor, I don't know whether at that point, you know, the question is does it make a difference in this context? It does. Does it make a difference in the liquidation context? I would suggest that as a matter of the law, the broad definition of claim gets triggered when there is not a dissolution. And the case is ‑‑ But I'm telling you, there would be a dissolution. There's a bankruptcy. Creditors will be paid and the corporation is gone. There would be. But even in that context, you still have the priority issue. And the priority issue would be the same. I understand. So, but I want to just dissect this statute and address three points because first, you know, the real question is whether in the context of bankruptcy, a monetary payment is an alternative remedy for the equitable remedy of dissolution. That's really the crux of their argument. And we say self‑evidently a monetary payment is an alternative remedy because dissolution itself, as Judge Fernandez was suggesting, will result in payment. So, therefore, if that is true, then providing a claim is internally consistent. What's your best case to support that proposition? Best case, Your Honor, I'll start with the Supreme Court case of Ohio versus Kovac. And there the court basically says there is a claim found, a claim exists as a substitute for a mandatory injunction of cleanup. So, there, there was an injunction, which is essentially an order of, a dissolution order is similar to an injunction, but it said clean it up. It wasn't monetary. And the court basically said you can get a claim because a claim serves as a substitute. In another case, the Third Circuit case of Airline Pilots Association versus Continental Airlines, again, a claim was viewed as a substitute for the claimant's right to seniority integration. There the court again said, look, there is a monetary alternative that is available. And we believe that here there is a monetary alternative that is available. And that's precisely the point that I believe that Judge Fernandez was suggesting. And if that's true, if the premise of his questions are true, then we have a claim. Let me ask you, as a practical matter, how this would play out. If we agree with you this is construed as a claim, what happens now? What happens now, Your Honor, we go back to the judgee and then the bankruptcy court, and they would have to treat our client's claim as a claim, as opposed to equity. So, in other words. If it's treated as equity, what would happen? We would essentially, Your Honor, get nothing. I mean, as a practical matter, we would get nothing. Why is that? Well, we would get nothing based on the facts as we understand it. And the reason why that's, if this goes back, on the date of bankruptcy, Your Honor, they, in their schedules, said that there was equity in this company. At the confirmation hearing, they said that really this company doesn't have any value, even though equity remained intact. So, the practical effect of this is that we will be arguing that we are entitled to a claim measured as of the date of the bankruptcy. So, we're entitled to a claim. Okay. If this is treated as equity, all the other creditors would have their claims paid, and then at the end you would divvy up your share of what's left. Is that right? Yes. But if it's treated as a claim, this is an important point, the claim would not have priority over other creditors. It would be a claim that would follow payments to other unsecure creditors, then we would get paid, and then if there's anything left for the majority, which at that point would be the owner, and that's an equitable result. Why? Because they're the folks in control. They control the corporation. They've been drawing salaries and utilizing, taking risks with the corporation. If you take the risks, then it's fair. Explain again why it is that the claim is preferable to being just equity. It gives you priority over the majority. Is that what you're talking about? Yes, Your Honor. That's what it's all about. Yes, that's exactly what it's all about. Today, the inequity is demonstrated by the fact that we have counsel representing the corporation, but truly what is being represented is the interest of the majority because this really is not a dispute over the corporation. It's a dispute between the majority and the minority, yet we've had five years, more than five years, of litigation where the company is, quote, advancing the interests of the company, but in reality. If you'll open your time for one quick question, if I can. If this is treated as equity, then as a practical matter, does it render new victory the state court judgment? Yes, Your Honor, it does. It does. There was one other point, Your Honor. You're really out of time. Thank you. Thank you very much. Ms. Miller, you have a minute and 55 seconds. Thank you, Your Honors. I'll try to just hit on the main points. First, it's not a claim. All of the cases cited, the Ohio East versus Kovacs case, the Rabin case, they all look at state court law, and under the law of the state in which those cases are decided, the equitable remedy in that case can be breached, be it failure to clean up a toxic waste site, as in Ohio versus Kovac, or specific performance under Rabin, or in Ben Franklin Hotel's transfer of interest in property. All of those states have as an alternative remedy to the right granted in the state court. None of those involve state judgments, do they? Some of them do, and they include an alternative right to monetary damages. That's the distinction between each of those cases and the case at issue. There is nothing in the state court order that provides an alternative remedy for a right to payment. And you go back to Bankruptcy Code Section 1015A or B, and the linchpin of both of those subsections of Section 105A, in order to have a claim, you have to have a right to payment. But you disregard 105B, then, don't you? It seems to be a much broader concept here than what you pronounce. No, Your Honor, I'm not disregarding 105B, because 105B requires that you have an equitable right, the breach of which gives rise to monetary damages. And here, there can be no breach, because equity remains equity. There's no right to monetary damages. At the end of the day, in the state court, all they would get, if anything, is their dissolution value, the equity. Is there not a monetary benefit? Well, and under the plan, they can get that, because under the plan, as currently confirmed, that still extends as of today. All they have to do is make an election, and they get that monetary value is determined by the bankruptcy court, and they can be bought out. The interesting thing that was said today is they want more than that. They want somehow to have their cake and to eat it, too. They want to be equity, and they want to be a claimant. But there is no right to equity. Thank you very much, Ms. Miller. Thank you. To counsel, the case just argued is submitted. We'll stand in recess for the morning. Thank you. Thank you. Thank you. All rise. This court, for this session, stands adjourned.
judges: Block, Fernandez, Silverman